Date signed September 29, 2014



WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

|  |  |  |
|---|---|---|
| In re: | * | |
|  | * | |
| Johnny Torres, | * | Case No. 11-10862-WIL |
| Alba Luz Torres, | * | Chapter 13 |
|  | * | |
| Debtors. | * | |
|  | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

|  |  |  |
|---|---|---|
|  | * | |
| Johnny Torres, | * | |
| Alba Luz Torres, | * | |
|  | * | |
| Plaintiffs, | * | |
|  | * | |
| vs. | * | Adversary No.   13-00284 |
|  | * | |
| Sandy Y. Chang, *et al.,* | * | |
|  | * | |
| Defendants. | * | |
|  | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>MEMORANDUM OF DECISION</u>

Before the Court is a two-count Complaint alleging that the Defendants violated the

automatic stay of 11 U.S.C. § 362(a) and seeking disgorgement of attorney's fees paid to the

Defendants (the "Complaint"), and the Defendants' Answer thereto.    The Court presided over a

trial in this matter on February 12, 2014.    At the conclusion of the trial, the Court permitted the

parties to submit post-trial briefs.    Upon consideration of the pleadings, the evidence and

testimony presented at trial, and the Plaintiffs' post-trial submission, the Court finds that the

Defendants did not violate the automatic stay of 11 U.S.C. § 362(a).[1]    Nevertheless, the Court

finds that the Defendants shall disgorge attorney's fees in the amount of $5,850.00 based on their

unethical actions and lack of candor in connection with the Debtors' bankruptcy case.

I.    **Findings of Fact**

The following facts are relevant to the Court's decision and are either undisputed or

supported by the evidence presented at trial.[2]    On January 11, 2011, the Debtors met with the

Defendants or an employee of their office to discuss the Debtors' financial condition and available

options to address their debt.    At the January 11th meeting, the Debtors entered into an

engagement agreement with the Defendants to provide "legal services related to bankruptcy filing

and the settlement of other debts" (the "Engagement Agreement").    In connection therewith, the

Debtors paid the Defendants $500.00 via check on January 11, 2011, to file a Chapter 13

bankruptcy case on the Debtors' behalf.    Two versions of the Engagement Agreement were

admitted into evidence at trial.    Both versions are dated January 11, 2011, and define the "Scope

of Representation" as: "ATTORNEY agrees to provide legal services related to bankruptcy filing

and the settlement of other debts. Any requests for legal services not covered by the scope of this

AGREEMENT will require a new Attorney-Client Agreement."    The two versions are identical

---

[1]  Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United
States Code unless otherwise noted.

[2]  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such,
and to the extent any conclusions of law constitute findings of fact, they are so adopted.

except as to the amount of the agreed legal fee to be paid, how the fee is to be paid, and the initials and signatures contained thereon.   The Debtors' version of the Engagement Agreement, admitted into evidence as Plaintiffs' Exhibit No. 1, provides for a "Legal Fee" of $3,500.00 to be paid "pursuant to the Schedule below."   Page 2 of the Debtors' version sets forth a payment schedule of "$500 for 7 Months."   Page 1 of the Debtors' version contains the Debtors' initials at the bottom of the page and page 2 contains only the Debtors' signatures.   The Defendants' version of the Engagement Agreement, admitted into evidence as Plaintiffs' Exhibit No. 2, is a copy of the agreement bearing three sets of initials on page 1—the Debtors' initials and Sandy Y. Chang's initials—and three signatures on page 2—the Debtors' and Sandy Y. Chang's ("Attorney Chang). Additionally, the Defendants' version has hand-written notes on page 1 regarding the agreed "Legal Fee" and hand-written notes on page 2 setting forth miscellaneous fees.   With respect to the contemplated "Legal Fee," the Defendants' version has $3,500 crossed out and adds: "$4,500 to be paid through plan."   Page 2 of the Defendants' version contains a breakdown of expenses totaling $500.00 for the filing fee, credit reports and other miscellaneous expenses.   Page 2 of the Defendants' version includes the same payment schedule as set forth in the Debtors' version of "$500 for 7 Months."   The Debtors did not initial the handwritten changes contained in the Defendants' version of the Engagement Agreement.   Rather, as with their version, the Debtors' initials are only located at the bottom of the first page.

On January 15, 2011, the Debtors returned to the Defendants' office to review and sign their bankruptcy papers, including their bankruptcy Schedules and Statement of Financial Affairs.   On that same day (the "Petition Date"), the Defendants filed a Chapter 13 bankruptcy petition for the Debtors.   The Defendants also filed a Disclosure of Compensation of Attorney for Debtor in the Debtors' bankruptcy case (the "2016(b) Statement") disclosing that they agreed

3

to receive $4,500.00 for legal services rendered in connection with the Debtors' bankruptcy case, no part of which was received prior to the filing of the 2016(b) Statement.[3]   The 2016(b) Statement provided that in return for the aforementioned fee, the Defendants agreed to render the following legal services for all aspects of the bankruptcy case:

    a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

    b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

    c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

    d.  Representation of the debtor in adversary proceedings and other contested bankruptcy matters.

The Debtors' initial Chapter 13 Plan and various Amended Plans were consistent with the 2016(b) statement in that they all provided for payment of the $4,500.00 attorney's fee balance as an administrative claim.   The Debtors' Statement of Financial Affairs filed with their petition indicates that they made no payments related to debt counseling or bankruptcy within one year preceding the commencement of their bankruptcy case.   The Debtors' Statement of Financial Affairs and the 2016(b) Statement were inaccurate in that both documents omitted the $500.00 payment made by the Debtors to the Defendants on January 11, 2011.

      Mr. Torres testified, and the Defendants did not dispute, that the Debtors directly paid the Defendants $1,500.00 in connection with their bankruptcy case (the "Additional Fee").   Of that

---

[3] Appendix F of this Court's Local Bankruptcy Rules establishes $4,500.00 as the maximum flat fee presumed to be reasonable in a Chapter 13 case for representation for all matters in a debtor's main bankruptcy case.   Appendix F further provides that counsel shall file a Supplemental Disclosure on Local Form E-2 whenever additional funds are received from any person other than a distribution from the trustee under the confirmed plan.

amount, Mr. Torres testified that $500.00 was paid pre-petition and $1,000.00 was paid

post-petition through two payments of $500.00 each.   These payments were reflected in several

billing statements sent to the Debtors by the Defendants.[4]

The Debtors' filed an Amended Plan on September 28, 2011, which was confirmed by an

Order entered on October 24, 2011.   The Defendants' were paid a total of $4,500.00 as an

administrative expense under the Debtors' confirmed plan.   Including the Additional Fee, the

Defendants were paid a total of $6,000.00 from the Debtors in connection with their bankruptcy

case, only $4,500.00 of which was disclosed to and approved by this Court.   On December 4,

2012, a Notice was issued to the Debtors by the Court informing the Debtors that Attorney Chang

had been suspended or disbarred from the practice of law in this Court.   On December 17, 2012,

Lorn William Hinish, Esq. entered his appearance as counsel to the Debtors in their bankruptcy

case.   Nearly five months later, on May 13, 2013, the Debtors filed the Complaint.

Count I of the Complaint seeks an Order disgorging all fees paid to the Defendants by the

Debtors, plus an award of actual damages to be determined by the Court, punitive damages of

not less than $100,000.00, and all reasonable legal fees and expenses.   Count II of the

Complaint seeks the disgorgement of $5,850.00 paid to the Defendants by the Debtors under 11

U.S.C. § 329 based on Attorney Chang's suspension from practicing before this Court during the

pendency of the Debtors' bankruptcy case.   The Debtors argue that this amount represents the

amount of fees paid that exceeds the reasonable value of services provided in connection with

---

[4] Although copies of the invoices and statements sent by the Defendants to the Debtors were included in the
Plaintiffs' exhibit binder as Exhibit No. 3, the Plaintiffs never formally moved Exhibit No. 3 into evidence
at trial.   Nevertheless, all parties referenced the invoices at trial.   Mr. Torres testified to receiving the
documents and Attorney Chang did not dispute Mr. Torres' testimony.   Moreover, Attorney Chang
referenced Plaintiffs' Exhibit 3 while testifying that Mr. Torres made payments to the Defendants
post-petition.

their bankruptcy case.

## III.    <u>Analysis</u>

The automatic stay of 11 U.S.C. § 362(a) prohibits: "[A]ny act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."   11 U.S.C. § 362(a)(3).   The automatic stay further prohibits: "[A]ny act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]"   11 U.S.C. § 362(a)(6).   The automatic stay is among the most basic protections afforded a debtor under bankruptcy law and courts must display a certain rigor in reacting to stay violations.   *Colon v. Rivera (In re Melendez Colon)*, 265 B.R. 639, 644 (B.A.P. 1st Cir. 2001) (*quoting Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975-976 (1st Cir. 1997)). 11 U.S.C. § 362(k) sets forth the consequences of a willful violation of the automatic stay.   That section provides, in relevant part:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362.   "A violation of the stay is willful if the creditor knew of the automatic stay and intentionally performed the actions that violated the stay."   *Ford Motor Credit Co. v. Hemsley (In re Bennett)*, 317 B.R. 313, 316 (Bankr. D. Md. 2004) (*quoting Barnett v. Edwards (In re Edwards)*, 214 B.R. 613, 620 (B.A.P. 9th Cir. 1997)).   "The debtor, as the party seeking damages for willful stay violations, has the burden of proving by a preponderance of the evidence that a willful stay violation occurred, that damages were suffered, and that the amount of relief requested is appropriate."   *Green Tree Servicing, LLC v. Taylor (In re Taylor)*, 369 B.R. 282, 286 (S.D.W.Va. 2007).   For purposes of § 362(k), "actual damages should be awarded only if there is

concrete evidence supporting the award of a definite amount." *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004).   An award of punitive damages, on the other hand, usually requires more than a mere willful violation of the automatic stay.   *Id.*

     The Debtors argue that Defendants violated § 362(a)(6) by attempting to collect pre-petition legal fees from the Debtors.   The Debtors' rely on case law that has developed in the Chapter 7 context that debts for unpaid prepetition legal fees are dischargeable in bankruptcy. *See Rittenhouse v. Eisen*, 404 F.3d 395 (6th Cir. 2005)(holding that a debt for pre-petition legal services is not one of the non-dischargeable debts enumerated in § 523(a)).   The Debtors failed to distinguish Chapter 13 bankruptcy cases in which legal fees may be paid over time as an administrative expense under a Chapter 13 plan from Chapter 7 cases in which attorneys must be paid prior to the filing of the bankruptcy case or the claim for prepetition legal fees is discharged. *See Bethea v. Robert J. Adams & Associates*, 352 F.3d 1125, 1127 (7th Cir. 2003).   Specifically, in Chapter 7, those debtors who cannot prepay an attorney in full can tender a small retainer for prepetition work and later hire and pay counsel once the proceeding begins for post-petition services.   *Id.* at 1128.   In a Chapter 13 case, however, the agreed upon fee encompasses both pre and post-petition services, as specified in the Disclosure of Compensation of Attorney for Debtor required to be filed with the Court.   The agreed upon fee can then be paid over time through a Chapter 13 plan.   In fact, § 330(a)(4)(B) specifically provides for compensation to the debtor's attorney in a Chapter 12 or Chapter 13 case to be paid as an administrative expense of the bankruptcy estate.   *See* 11 U.S.C. § 330(a)(4)(B).   There is no similar provision for the debtor's attorney in Chapter 7 or Chapter 11 cases where the debtor is not a debtor in possession.   *See* 3 Collier on Bankruptcy ¶ 330.02 at 330-7 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).   In light of the differences in compensation between Chapters 7 and 13, the Court permitted the parties

to file post-trial briefs addressing whether the Defendants' post-petition attempts to collect their prepetition attorney's fees constituted a stay violation in the Chapter 13 context.

Only the Debtors filed a post-trial brief.   In their post-trial brief, the Debtors admit that they were unable to locate any published legal authority in which a Chapter 13 debtor's counsel was held to have violated the automatic stay in collecting a prepetition debt for legal fees. Nevertheless, the Debtors relied on § 362(a)(3) to argue that any post-petition attempt by Defendants to obtain payments from the Debtors outside of the fees allowed in their Chapter 13 Plan constitutes a stay violation "because it is an attempt to obtain possession of property of the estate – in this case, Plaintiffs' post-petition earnings."   The Court disagrees.   As explained above, in a Chapter 13 case, a debtor's plan may call for post-petition payments to his/her attorney for prepetition services.   "Under those circumstances a court may review and, if necessary cancel payments for excessive pre-petition fees."   *Hessinger and Assoc. v. U.S. Trustee (In re Biggar)*, 110 F.3d 685, 688 (9th Cir. 1997).   Moreover, this District has established presumptive "no look" fees and allows for payment of said fees under a confirmed Chapter 13 plan, which fees encompass both prepetition and postpetition services rendered in connection with the debtor's bankruptcy case.   As such, the Defendants did not violate the automatic stay by seeking to collect payment of their attorney's fees post-petition and judgment is awarded in favor of the Defendants on Count I

of the Complaint.[5]

Count II of the Complaint seeks the disgorgement of $5,850.00 paid to the Defendants by the Debtors under 11 U.S.C. § 329 based on Attorney Chang's suspension from practicing before this Court during the pendency of the Debtors' bankruptcy case.   Section 329 provides:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to–
> > (1) the estate, if the property transferred–
> >
> > (A) would have been property of the estate; or
> >
> > (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> >
> > (2) the entity that made such payment.

11 U.S.C. § 329.   "[Section] 329 permits unethical conduct to serve as a factor considered in analyzing the reasonableness of legal fees paid by a debtor."   *In re Soulisak*, 227 B.R. 77, 82

---

[5]   Attorney Chang testified that there were two separate agreements between the parties – one for the bankruptcy filing and one for a loan modification.    If the Court believed Attorney Chang's testimony then the Defendants would have violated the automatic stay by seeking to collect the Additional Fees incurred pre-petition unrelated to the bankruptcy filing.    The Court, however, believes the Debtors' version of the arrangement that the parties agreed to a fee of $3,500.00 for the Chapter 13 bankruptcy filing, as set forth in Plaintiffs' Exhibit No. 1.    The Court believes that the Defendants unilaterally changed the Engagement Agreement.    This is supported by the lack of the Debtors' initials next to the handwritten terms of the Defendants' version of the Engagement Agreement and the fact that a copy of the Defendants' version of the Engagement Agreement was provided to this Court rather than the original.    The Court believes the Defendants fabricated their version of the Engagement Agreement and further believes that their representations to the Court in the 2016(b) Statement were false.    The Defendants unethical conduct will be addressed in connection with Count II of the Complaint.

(Bankr. E.D. Va. 1998)(*citing In re Devers*, 12 B.R. 140 (D.D.C. 1981)).   "A bankruptcy court is given wide latitude in fashioning an appropriate sanction for unethical behavior, including the disgorgement of fees."   *Id.* (*citing Arens v. Boughton (In re Prudhomme)*, 43 F.3d, 1000, 1004 (5th Cir. 1995)); *see also Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 749-50 (D. Md. 1997) *aff'd,* 141 F.3d 1162 (4th Cir. 1998) (holding that Federal courts have inherent authority to discipline attorneys who appear before them for conduct deemed inconsistent with ethical standards imposed by the court.).

In addition to the reasonableness standard set forth in § 329, attorneys practicing before this Court are required to abide by the Maryland Lawyers' Rules of Professional Conduct[6]  and are encouraged to adhere to the Maryland State Bar Association Code of Civility, a copy of which is contained in Appendix E to this Court's Local Rules.   Rule 3.3 of the Maryland Lawyers' Rule of Professional Conduct is particularly relevant to the case at hand.   It is entitled "Candor to the Tribunal" and provides in relevant part:

---

[6] "The Bankruptcy Court is a unit of the District Court to which all bankruptcy cases have been referred." *Lucas v. Nickens (In re Lucas)*, 312 B.R. 559, 574 (Bankr. D. Md. 2004)(*citing* 11 U.S.C. §§ 151 and 157(a); U.S. D. Ct. Md. Loc. R. 402(f); U.S. Bankr. Ct. Md. Loc. R. 9010–3(a)).   Accordingly, this Court's authority to regulate the practice of law is derived from the District Court's Local Rules.   *Id.*   Local Rule 704 of the United States District Court for the District of Maryland, applicable to this Court through Local Bankruptcy Rule 9010-3, instructs the Court to apply the Maryland Lawyers' Rules of Professional Conduct, as adopted by the Maryland Court of Appeals.

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;

(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

Md. Lawyers' Rules of Prof'l Conduct, Rule 3.3.   Similarly, the sixth duty set forth in the

Maryland State Bar Association Code of Civility is germane to the Defendants' conduct here.   It

applies to all lawyers and provides, in pertinent part: "We will not engage in conduct that offends

the dignity and decorum of judicial and administrative proceedings, bring disorder to the tribunal

or undermines the image of the legal profession…[.]"   *See* Md. State Bar Ass'n Code of Civility,

¶ 6.

As set forth above, the 2016(b) Statement and the Debtors' confirmed Chapter 13 Plan

provided for $4,500.00 to be paid to the Defendants as an administrative expense.   The 2016(b)

Statement did not exclude loan modifications or negotiations with creditors regarding secured

loans.   Nevertheless, the unrefuted evidence was that the Defendants received $6,000.00 in

connection with the Debtors' bankruptcy case, including a $500.00 payment received pre-petition

that was not disclosed to the Court.   Mr. Torres testified that he believed the agreed upon fee was

$3,500.00 for services to be rendered in connection with his bankruptcy case.   His understanding

was based on the Debtors' version of the Engagement Agreement.   He testified that he believed

11

that the $3,500.00 fee covered his bankruptcy case and was to be paid through monthly payments of $500.00, with the first payment made on January 11, 2011.   Mr. Torres did not recall being told that he was responsible for the filing fee or any other expenses in addition to the $3,500.00 fee. He further testified that he had never seen the Defendants' version of the Engagement Agreement or the handwritten notes thereon and that he was surprised to learn that the Defendants had been paid $4,500.00 through the Debtors' Chapter 13 plan.

Attorney Chang testified that she had two agreements with the Debtors—one to provide bankruptcy services and the other to obtain a loan modification for the Debtors for which the Additional Fees were paid.   The Court did not find Attorney Chang to be a credible witness.   Her recollection of the pertinent events was inconsistent and contradicted the testimony of both Debtors.   Mr. Torres' testimony was clear that Attorney Chang did not obtain a loan modification for the Debtors.   Rather, she merely authorized the Debtors to speak directly to lender's counsel to address their post-petition mortgage arrears.   This is supported by Plaintiffs' Exhibit No. 15, which is a copy of a letter from Attorney Chang authorizing the Debtors' lender to communicate directly with the Debtors regarding the curing of Debtors' mortgage arrears.   Moreover, contrary to Attorney Chang's testimony, the evidence established that the negotiations with Debtors' lender did not relate to a loan modification but rather to curing post-petition mortgage arrears, which were subsequently treated through an amended Chapter 13 plan as is typical in a Chapter 13 case. There was simply no evidence to support Attorney Chang's position that the Additional Fees were for a loan modification.   Therefore, the Court finds that the Defendants were seeking the Additional Fees for the same work as the fees to be paid under the Debtors' Chapter 13 plan.   In so doing, the Defendants took advantage of their clients' unfamiliarity with the bankruptcy process and related fee structure.   The Defendants also made a false representation to this Court in the

12

2016(b) Statement and failed to file a Supplemental Disclosure to account for the Additional Fees in violation of this Court's Local Bankruptcy Rules.   The Court believes that the Defendants doctored their version of the Engagement Agreement after the fact to bring it in line with the 2016(b) Statement once faced with this litigation.   Such conduct is in direct contravention of Rule 3.3 of the Maryland Lawyers' Rule of Professional Conduct.   The Court bases this finding on Mr. Torres' trial testimony and the fact that the hand-written changes on the Defendants' version of the Engagement Agreement were neither initialed by the Debtors nor was the original Engagement Agreement produced.   Attorney Chang's lack of candor throughout the Debtors' bankruptcy violated her professional responsibilities to her client and to this Court.     Her conduct evidences a clear disregard for the code of professional conduct to which she is bound and is both offensive and undermining of the legal profession.   Accordingly, the Court finds that the Defendants shall disgorge the amount of $5,850.00 to the Debtors pursuant to 11 U.S.C. § 329.   This is the amount the Court finds exceeds the reasonable value of the services rendered by the Defendants in connection with the Debtors' bankruptcy case in light of their unethical behavior.   *See In re Soulisak*, 227 B.R. 77, 82 (Bankr. E.D. Va. 1998).   An Order consistent with this Memorandum will be entered contemporaneously herewith.

cc:    All Parties
        All Counsel
        Chapter 13 Trustee

**END OF MEMORANDUM**